IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD GAMEL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | No. 4:19cv3604 |
| VS. | § | |
| | § | Jury Trial Demanded |
| FORUM ENERGY TECHNOLOGIES, INC., | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Richard Gamel files this motion for partial summary judgment. This motion is directed at the issues of whether Mr. Gamel has a disability within the meaning of the Americans with Disabilities Act and whether there is a legal basis or evidence to support certain affirmative defenses asserted by Forum Energy.

## NATURE AND STAGE OF THE PROCEEDING

This is a wrongful termination lawsuit under the Americans with Disabilities Act. Discovery is complete, and the case is ready for trial.

## ISSUES PRESENTED

1.  Is Mr. Gamel's hepatitis C a disability within the meaning of the ADA?

2.  Is there any evidence to support Forum Energy's affirmative defenses of (a) failure to exhaust administrative remedies, (b) the statute of limitations, (c) the doctrine of employment at will, (d) the exclusive remedies provision of the Texas Workers' Compensation Act, (e) after-acquired evidence, and (f) waiver, estoppel, laches, and unclean hands.

These issues are governed by the usual standard under Fed. R. Civ. P. 56: whether there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law.

1

## **OVERVIEW OF THE CASE**

This motion does not address the major substantive issues in the case. Nonetheless, a summary of Mr. Gamel's allegations is helpful to understanding the context of the narrow issues raised in this motion.

Mr. Gamel was diagnosed with hepatitis C over a decade ago. He also suffers from severe asthma. For several years, his hepatitis C was dormant. He had occasional asthma attacks, but had an inhaler to deal with those situations.

Mr. Gamel worked as a machinist for Forum Energy. Around July 2017, his hepatitis C ceased to be dormant, which began to cause problems for him at work. He told this to his lead and to the production manager. The production manager told him that he would not receive any special treatment and that he should not even ask for an accommodation. From that point on, the production manager became increasingly hostile to Mr. Gamel.

In late September 2017, Mr. Gamel went to the hospital and had a large quantity of fluid removed from his abdomen. At this point, the production manager began to lobby the HR department to take steps to fire Mr. Gamel. A few weeks later, the production manager concocted a false report of erratic behavior on the part of Mr. Gamel and persuaded HR to order that Mr. Gamel be sent for a drug test. Mr. Gamel told everyone that he was on prescription medications for his hepatitis C and asthma and warned them that this would interfere with any drug test. The production manager ordered him to take the drug test anyway.

The drug testing company produced a positive result for methamphetamines, which is absurd. Mr. Gamel told the medical review officer (MRO) for the drug testing company about his prescriptions, and the MRO told him that he should be re-tested to account for the prescription medications. The MRO told Mr. Gamel to contact HR to schedule a new test. Mr. Gamel called

the HR representative several times and left voice mail messages with this information. The HR representative did not return his phone calls. Meanwhile, the production manager was continuing to pressure HR to fire Mr. Gamel.

The MRO sent a copy of the test results to Forum Energy. Ignoring Mr. Gamel's voice mail messages about a second test, the HR representative proceeded to appease the production manager by terminating Mr. Gamel. Incredibly, she pretended that she had been trying to reach Mr. Gamel "to no avail," even though she had ignored his voice mail messages and had received e-mails from him. Forum Energy never conducted the second drug test as directed by the MRO. In fact, Forum Energy now claims that Mr. Gamel never told them that the MRO had directed a second drug test. The communications between Mr. Gamel and the HR representative will be the major disputed issue at trial.

In sum, Mr. Gamel contends that (1) Forum Energy sent him for a non-random drug test even though it knew that he was on prescription medications for his disabilities, and (2) Forum Energy ignored the communications from Mr. Gamel that the MRO had directed a second test because of the prescriptions for his disabilities, and (3) instead, Forum Energy seized on the flawed drug test as a pretext for firing Mr. Gamel.

## ARGUMENT

I. <u>Mr. Gamel's Hepatitis C Is a Disability Within the Meaning of the ADA</u>.

Under the original version of the ADA, the courts often interpreted the statute narrowly and found that many different types of conditions were not "disabilities" within the meaning of the statute. In 2008, Congress passed the ADA Amendments Act to overrule many of the older decisions. P.L. 110-325, § 2(a)(6), 42 U.S.C. §12101 note ("[A]s a result of these Supreme Court

cases, lower courts have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities.").

The current version of the ADA defines a "disability" broadly. In fact, the ADA states: "The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). A disability is "a physical or mental impairment that substantially limits one or more major life activities of such individual." *Id.* § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). "[A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id.* § 12102(2)(B).

The determination of whether an impairment substantially limits a major life activity is made "without regard to the ameliorative effects of mitigating measures" such as medication. *Id.* § 12102(4)(E). Furthermore, "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." *Id* § 12102(4)(D).

With these principles in mind, Mr. Gamel's hepatitis C easily qualifies as a disability.[1] Mr. Gamel was diagnosed with hepatitis C around 2011. Gamel Dep. at 23.[2] It was dormant for a

---

[1] Mr. Gamel's asthma can also qualify as a disability, because it substantially limits the major life activity of breathing when active. *E.g., Godbolt v. Trinity Prot. Servs.*, 2017 U.S. Dist. LEXIS 92010, at 30-31 (D. Md. June 12, 2017) (discussing the proof requirements for asthma). However, this motion focuses on the hepatitis C because it was the hepatitis C that triggered the series of events that led to Mr. Gamel's termination.

[2] Excerpts from Mr. Gamel's deposition are in the Appendix.

number of years, but Mr. Gamel found out that it was no longer dormant on July 28, 2017. At that time, it was causing fatigue, irritability, and constant tiredness. Gamel Dep. at 155. In September 2017, the hepatitis C triggered liver failure. Over nine liters of fluid were drained from Mr. Gamel's abdomen at the hospital. App. at 6. Mr. Gamel described this incident:

> Q. . . . What medical condition or conditions do you feel constituted disability?
>
> A. Constant fatigue. Ammonia building up in my system due to my liver. When it starts -- I don't go to the hospital every time my liver acts up I just know my liver is acting up when, like, I had the surgery at Forum, it was a Friday night, I felt like I had indigestion. And so I felt like kind of gassy, but no big deal.
>
> And then, by the middle of the night, when my little Chihuahuas -- we have two little miniatures -- ran across me. And that hurt like hell.
>
> And the next morning, I was laying on my back and my wife said, Papa, I looked up hepatitis, and with what you're experiencing, you're not passing gas orally or anything. Will you please go see a -- a -- the ER.
>
> So I went to Tomball Memorial -- or The Woodlands Memorial Hermann Hospital. And that's when the doctor told me about two hours later, we're going to have drain your abdomen. You'll have to thank your wife. You owe her. In two days you would be wearing a sheet over your head if you hadn't come in.
>
> Because my liver stopped processing enzymes and proteins, so I built up 9 1/2 liters of fluid in my abdomen cavity. I looked like I was pregnant, but it was gas, bloating.
>
> . . . .
>
> Q. So just to clarify, what disabilities do you feel that you have?
>
> A. Hepatitis.
>
> Q. Okay. Hepatitis?
>
> A. Yeah. Constant fatigue or stress. It clouds your thinking, because when you -- when the ammonia, according to the doctor, builds up in your system when the liver is not processing the enzymes and proteins, the ammonia can cause you to go in a state of confusion, or have anger issues.

5

> You'll be quicker on your temper. And you don't know this is happening because of the exchange in your system.

Gamel Dep. at 54-56.  The fatigue was bad enough that his lead sent him home early on several occasions.  Gamel Dep. at 58-60.

The evidence thus shows that Mr. Gamel's hepatitis C meets the definition of a disability under the ADA.  Mr. Gamel submitted an interrogatory to Forum Energy to find out whether this issue was genuinely disputed.  Forum Energy dodged the question:

> **INTERROGATORY NO. 9:** Do you dispute that Mr. Gamel had a disability within the meaning of the Americans with Disabilities Act? If so, state your general factual basis for disputing the existence of a disability.
>
> **RESPONSE**: Defendant objects to this Interrogatory to the extent it calls for information protected by the Attorney-Client and/or Work-Product privileges. Additionally, Defendant also objects to this Interrogatory because it calls for a legal conclusion. Subject to and without waiving these and the general objections, Defendant answers as follows: Defendant entered a limited general denial within the meaning of Fed. R. Civ. P. 8. Plaintiff has the burden of showing that he had a "disability" within the meaning of the Americans with Disabilities Act. As such, that fact is disputed. Additionally, Defendant also objects to this Interrogatory because it calls for a legal conclusion. Defendant reserves the right to supplement its response to this Interrogatory upon the discovery of additional responsive information in accordance with the Federal Rules of Civil Procedure, any agreement between the parties, and/or any order of the Court.

App. at 13.  Forum Energy never supplemented this answer.  Other than stating that Mr. Gamel bears the burden of proof (which is certainly true), Forum Energy has provided no reason why Mr. Gamel's hepatitis C would not qualify as a disability.

In sum, Mr. Gamel's hepatitis C substantially limited a major bodily function (his liver), substantially limited his thinking, and caused constant fatigue that substantially limited virtually all of his major life activities.  While Mr. Gamel was able to continue working, "An impairment that substantially limits one major life activity need not limit other major life activities to be

6

considered a disability." 42 U.S.C. § 12102(4)(C). Mr. Gamel's hepatitis C is a disability under the ADA. The Court should grant partial summary judgment as to this issue.

II. <u>Many of Forum Energy's Affirmative Defenses Have No Basis in Law or in Fact</u>.

    A. <u>Exhaustion Before the EEOC</u>

Mr. Gamel filed a charge with the EEOC. App. at 21. The EEOC later issued a right to sue letter. App. at 23. In its answer, Forum Energy alleges that "To the extent Plaintiff's disability discrimination claims exceed the scope of or are inconsistent with Plaintiff's EEOC Charge, they are barred by the failure to exhaust administrative remedies." Answer (Doc. 3) at 3.

The Fifth Circuit has stated that "this court interprets what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (citation omitted). This makes sense for a number of reasons, because EEOC charges are filed without discovery of the underlying facts and without knowledge of the positions being taken by the employer. Furthermore, in many cases (though not this case), the EEOC charge is drafted by a non-lawyer EEOC employee for a pro se employee.

In any event, all of the claims in this lawsuit are within the general scope of the EEOC charge (App. at 21) and would reasonably be expected to grow out of an EEOC investigation. As a matter of law, Forum Energy's exhaustion defense is without merit.

    B. <u>Limitations</u>

In its answer, Forum Energy alleges that "To the extent they are based on events that occurred more than 300 days before his EEOC charge, Plaintiff's claims are barred in whole or in part by the statute of limitations." Answer (Doc. 3) at 3. Mr. Gamel filed his EEOC charge on

April 22, 2018. App. at 21. June 26, 2017 is 300 days prior to the filing of the EEOC charge. Literally nothing relevant to this lawsuit occurred before June 26, 2017. As a matter of law, Forum Energy's limitations defense is without merit.

### C. The Doctrine of Employment at Will

In its answer, Forum Energy alleges that "Plaintiff's claims are barred by the doctrine of employment-at-will." Answer (Doc. 3) at 3. As the Court knows, the doctrine of employment at will is a common law rule under state law. It does not, and cannot, override a federal statute such as the ADA. As a matter of law, Forum Energy's employment at will defense is without merit.

### D. Texas Workers' Compensation Act

In its answer, Forum Energy alleges that "To the extent Plaintiff seeks damages for injuries otherwise covered by the Texas Workers' Compensation Act, Tex. Labor Code § 408.001, his claims for damages are barred by the exclusive remedy provision of that statute." Answer (Doc. 3) at 3. Mr. Gamel does not understand why Forum Energy would think that this employment discrimination case would seek damages for injuries covered by the workers' compensation laws, but in any event a state statute cannot preempt the ADA. As a matter of law, Forum Energy's workers' compensation bar defense is without merit.

### E. After-Acquired Evidence

There is no evidence to support an after-acquired evidence defense. Mr. Gamel sought discovery on the issue, but Forum Energy responded with frivolous objections:

> **INTERROGATORY NO. 7**: With respect to Defense 16, identify the after-acquired evidence, state when you discovered it, and explain why you contend that it would have led to Mr. Gamel's termination.
>
> **RESPONSE**: Defendant objects to this Interrogatory to the extent it calls for information protected by the Attorney-Client and/or Work-Product privileges. Additionally, Defendant also objects to this Interrogatory because it calls for a legal conclusion.

App. at 12-13; *see* Fed. R. Civ. P. 33(a)(2) (providing that "an interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact"). Forum has never provided a factual basis. There is no evidence to support the defense.

    F.    <u>Waiver, Estoppel, Laches, and Unclean Hands</u>

This is a "laundry list" defense. Mr. Gamel sought discovery on the issue, but once again Forum Energy responded with the same frivolous objection:

> **INTERROGATORY NO. 8**: With respect to Defense 17, explain why you contend that Mr. Gamel's claims are barred by "waiver, estoppel, laches, and/or unclean hands."
>
> **RESPONSE**: Defendant objects to this Interrogatory to the extent it calls for information protected by the Attorney-Client and/or Work-Product privileges. Additionally, Defendant also objects to this Interrogatory because it calls for a legal conclusion.

App. at 13. Forum Energy has never provided a factual basis for any of these defenses. There is no evidence to support these defenses.

III.    <u>Conclusion</u>

For the foregoing reasons, the Court should grant this motion, determine that Mr. Gamel's hepatitis C constitutes a disability under the ADA, and dismiss Forum Energy's affirmative defenses of (a) failure to exhaust administrative remedies, (b) the statute of limitations, (c) the doctrine of employment at will, (d) the exclusive remedies provision of the Texas Workers' Compensation Act, (e) after-acquired evidence, and (f) waiver, estoppel, laches, and unclean hands.

9

Respectfully submitted,

/s/ David C. Holmes
David C. Holmes, Attorney in Charge
State Bar No. 09907150
Southern District No. 5494
13201 Northwest Freeway, Suite 800
Houston, Texas 77040
Telephone: 713-586-8862
Fax: 713-586-8863

ATTORNEY FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this pleading was sent electronically to all counsel of record on May 13, 2021.

/s/ David C. Holmes
David C. Holmes