United States District Court
Southern District of Texas
**ENTERED**
August 11, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD GAMEL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-3604 |
| | § | |
| FORUM ENERGY TECHNOLOGIES, | § | |
| INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Richard Gamel ("Gamel"), brings this action against defendant, Forum Energy Technologies, Inc. ("FET"), for discriminatory discharge, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"). Pending before the court are Plaintiff's Motion for Partial Summary Judgment ("Gamel's MPSJ") (Docket Entry No. 21), Defendant's Motion for Complete Summary Judgment ("FET's MSJ") (Docket Entry No. 22), Plaintiff's Motion to Exclude Expert Testimony of Dr. Janci Lindsay (Gamel's Motion to Exclude") (Docket Entry No. 23), and FET's Objections to the Plaintiff's Evidence Submitted in Response to Motion for Complete Summary Judgment ("FET's Objections to Plaintiff's Evidence") (Docket Entry No. 31). For the reasons set forth below, Gamel's MPSJ will be denied, FET's MSJ will be granted, Plaintiff's Motion to Exclude will be denied as moot, FET's Objections to Plaintiff's Evidence will be denied, and this action will be dismissed.

## I. Undisputed Facts[1]

Gamel was employed by FET as a machinist from approximately September 26, 2013, to October 24, 2017.[2] Gamel has been diagnosed with Hepatitis C.[3] For a number of years Gamel's Hepatitis C was dormant. Around July of 2017, Gamel's Hepatitis C ceased to be dormant, and from September 22nd to 24th of 2017 he was hospitalized with symptomatic, new onset ascitis (fluid buildup), where 7.4 liters of fluid were removed from his abdomen.[4]

---

[1]See Claim for Relief, Complaint, Docket Entry No. 1, pp. 1-3 ¶¶ 5-14; Overview of the Case, Gamel's MPSJ, Docket Entry No. 21, pp. 2-3; Statement of Facts, Defendant's Response to Plaintiff's Motion for Partial Summary Judgment ("FET's Response to MPSJ"), Docket Entry No. 25, 7-9; Statement of Facts, FET's MSJ, Docket Entry No. 22, pp. 7-11; and Statement of Facts, Plaintiff's Response to Motion for Summary Judgment, ("Gamel's Response to MSJ"), Docket Entry No. 27, pp. 6-16. Page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2]Declaration of Nathalie Friar ("Friar Declaration"), ¶ 5, Exhibit 1 to FET's MSJ, Docket Entry No. 22-1, p. 2.

[3]Gamel has also been diagnosed with Asthma, but he acknowledges that "it was the hepatitis C that triggered the series of events that led to [his] termination." Gamel's MPSJ, Docket Entry No. 21, p. 4 n. 1.

[4]Oral Deposition of Richard B. Gamel ("Gamel Deposition"), p. 23:22-23, included in Appendix to Plaintiff's Response to Motion for Summary Judgment ("Gamel's Appendix"), Docket Entry No. 27-1, p. 8. See also Discharge Summary included in Gamel's Appendix, Docket Entry No. 27-1, p. 62. FET objects to Gamel's hospital records as "Hearsay/Double Hearsay Not Authenticated." FET's Objections to Plaintiff's Evidence, Docket Entry No. 31, p. 4. "At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form." Maurer v. Independence Town, 870 F.3d 380, 384 (5th Cir. 2017) (citing Fed. R. Civ. P. 56(c); Lee v. Offshore Logistical & Transport, L.L.C., 859 F.3d (continued...)

On October 16, 2017, after two of Gamel's co-workers — Kyle Peterson ("Peterson") and Jennifer Miller ("Miller") — reported that he was behaving strangely, production manager, Dan Bergerson ("Bergerson") asked Gamel to take to a reasonable suspicion drug test, and Gamel agreed.[5] The drug test was conducted by DISA, a third-party vendor, which routinely conducts employee-related drug

---

[4](...continued)
353, 355 (5th Cir. 2017); LSR Consulting, LLC v. Wells Fargo Bank, N.A., 835 F.3d 530, 534 (5th Cir. 2016)). The Fifth Circuit explained that "[a]fter a 2010 revision to Rule 56, 'materials cited to support or dispute a fact need only be capable of being "presented in a form that would be admissible in evidence."'" Id. (quoting LSR Consulting, 835 F.3d at 534 (quoting Fed. R. Civ. P. 56(c)(2)). The court explained that "[t]his flexibility allows the court to consider the evidence that would likely be admitted at trial — as summary judgment is trying to determine if the evidence admitted at trial would allow a jury to find in favor of the nonmovant — without imposing on parties the time and expense it takes to authenticate everything in the record." Id. (citing Fed. R. Civ. P. 56(c)(1)(A)). Because FET does not argue that Gamel's hospital records are not capable of being presented in a form that would be admissible in evidence at trial, and because Gamel's hospital records appear to be the type of evidence that would likely be admitted at trial as business records, FET's objection to Gamel's hospital records will be overruled. See Fed. R. Evid. 803(6) (expressly allowing admission of records of opinion and diagnosis). See also Kuklis v. Hancock, 428 F.2d 608, 612-13 (5th Cir. 1970) (citing Thomas v. Hogan, 308 F.2d 355, 360-61 (4th Cir. 1962)("There is good reason to treat a hospital record entry as trustworthy.")).

[5]Gamel Deposition, p. 79:4-9, Gamel's Appendix, Docket Entry No. 27-1, p. 22 (referring to the drug test as "voluntary"). See also Friar Declaration, ¶¶ 8-9, Exhibit 1 to FET's MSJ, Docket Entry No. 22-1, p. 3; Attachment D to Friar Declaration, Docket Entry No. 22-1, pp. 25-26 (co-worker statements describing Gamel's behavior); and Addendum to Charge of Discrimination, Exhibit 7 to FET's MSJ, Docket Entry No. 22-7, 4 (Gamel stated "I agreed to the test because I had nothing to hide.").

tests and provides certified results on which FET relies.[6]  Gamel's

drug test was positive for amphetamines and methamphetamine.[7]

On October 21, 2017, Gamel was interviewed by Medical Review

Officer ("MRO") Jerry Hernandez, M.D.  During the interview Gamel

told Dr. Hernandez about the prescription medications that he was

taking for Hepatitis C and Asthma.  Following his interview of

Gamel, Dr. Hernandez verified that the Gamel tested positive for

Amphetamine, Amphetamines Class, and Methamphetamine.[8]

By letter dated October 24, 2017, and signed by Human

Resources Representative Mande Suttles ("Suttles"), FET discharged

Gamel for violating FET's Substance Abuse Policy.[9]  The discharge

letter stated that Gamel was being discharged for cause because

"the Company received a report that you had a confirmed positive

drug test."[10]  The discharge letter advised Gamel not to "go to the

---

[6]Friar Declaration, ¶ 9, Docket Entry No. 22-1, p. 3.

[7]Id. at ¶ 11.  See also Exhibit 4 to FET's MSJ, Docket Entry No. 22-4 (DISA Drug Test Result Certificate); Gamel Deposition, pp. 89:6 ("I failed the drug test. . ."), 94:14-15 ("[H]e sent me to take a drug test.  I failed it."), 194:14-18 (acknowledging that he was discharged because of a positive drug test), Gamel's Appendix, Docket Entry No. 27-1, pp. 24, 26, 51.

[8]Medical Review Officer Worksheet, Exhibit 5 to FET's MSJ, Docket Entry No. 22-5, pp. 7-8.

[9]Friar Declaration, ¶ 11, Docket Entry No. 22-1, p. 3.  See also Attachment B to Friar Declaration, Docket Entry No. 22-1, pp. 9-23 (FET's Substance Abuse Policy); Attachment D to Friar Declaration, Docket Entry No. 22-1, p. 28 (discharge letter); and Gamel Deposition, p. 194:14-18, Gamel's Appendix, Docket Entry No. 27-1, p. 51 (acknowledging that a positive drug test caused his discharge).

[10]Attachment D to Friar Declaration, Docket Entry No. 22-1, p. 28.

facility for any reason."[11]   The decision to discharge Gamel was made by Bergerson, Suttles, and Vice-President of Human Resources, Michael Danford.[12]

When, on November 9, 2017, Gamel appeared in FET's parking lot at 5:15 a.m., Bergerson contacted local law enforcement and complained that Gamel was trespassing.[13]

On or about April 20, 2018, Gamel filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEPC"),[14] and on June 27, 2019, the Equal Employment Opportunity Commission ("EEOC") issued Gamel a right-to-sue letter.   On September 24, 2019, Gamel filed this action.[15]

## II.   Motions for Summary Judgment

Gamel alleges that FET discriminated against him on the basis of disability in violation of the ADA by discharging him, by failing to provide him a reasonable accommodation, and by retaliating against him for having engaged in protected activity.[16]

---

[11] Id.

[12] Friar Declaration, ¶ 8, Exhibit 1 to FET's MSJ, Docket Entry No. 22-1, p. 3.

[13] Id. at ¶ 13.   See also Exhibit 6 to FET's MSJ, Grimes County Sheriffs Office Call for Service Report, Docket Entry No. 22-6.

[14] Exhibit 7 to FET's MSJ, Docket Entry No. 22-7, pp. 3 (Charge of Discrimination), and 4 (Addendum to Charge of Discrimination).

[15] Complaint, Docket Entry No. 1, p. 3 ¶ 14.

[16] Id.

Gamel argues that he is entitled to partial summary judgment that his Hepatitis C is a disability within the meaning of the ADA, and that many of FET's affirmative defenses have no basis in law or fact.[17]  FET argues that it is entitled to complete summary judgment on Gamel's claims because (1) Gamel is not disabled within the meaning of the ADA and, therefore, cannot establish a prima facie case for discrimination, failure to accommodate, or retaliation under the ADA; (2) Gamel was discharged for the legitimate, nondiscriminatory reason that he failed a drug test; and (3) Gamel cannot cite any evidence capable of establishing that FET's reason for discharging him was pretextual, that FET wrongfully failed to provide Gamel reasonable accommodation, or the FET retaliated against Gamel for engaging in conduct protected by the ADA.[18] Asserting that his Hepatitis C is a disabling condition, that FET used the drug test as a pretext for discrimination, that FET failed to accommodate his disability by retesting him, and that FET retaliated against him for seeking a retest, Gamel urges the court to grant his MPSJ and deny FET's MSJ.[19]

---

[17]Gamel's MPSJ, Docket Entry No. 21, pp. 4 and 7.  See also Gamel's Response to MSJ, Docket Entry No. 27, pp. 16-17.

[18]FET's MSJ, Docket Entry No. 22, p. 7.  See also Defendant's Reply to Plaintiff's Response to Motion for Complete Summary Judgment ("FET's Reply"), Docket Entry No. 30, pp. 8-13.

[19]Gamel's Response to MSJ, Docket Entry No. 27, pp. 17-23; Plaintiff's Reply in Support of Motion for Partial Summary Judgment ("Gamel's Reply"), Docket Entry No. 29, pp. 2-3.

## A.    Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact, and the law entitles it to judgment.   Fed. R. Civ. P. 56.   Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).   The Supreme Court has interpreted the plain language of Rule 56 to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).   A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 106 S. Ct. at 2553-2554).   "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."   Id.   If, however, the moving party meets this burden, the nonmovant must go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, or other admissible evidence that facts exist over which there is a genuine issue for trial.   Id.   "[T]he court must

draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075. "Unsupported allegations or affidavits or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." Clark v. America's Favorite Chicken Co., 110 F.3d 295, 297 (5th Cir. 1997).

**B. Applicable Law**

Title I of the ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees . . ." 42 U.S.C. § 12112(a). The ADA provides that the term "discriminate" includes "not making reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability, . . ." 42 U.S.C. § 12112(b)(5)(A). The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The definition of disability

includes "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A).  To qualify as disabled it is not enough merely to have an impairment; a plaintiff must demonstrate that the impairment "substantially limits" a "major life activity." Hale v. King, 642 F.3d 492, 500-01 (5th Cir. 2011) (per curiam) (citing Equal Employment Opportunity Commission v. Chevron Phillips Chemical Co., LP, 570 F.3d 606, 614 (5th Cir. 2009)). "'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i).  "An impairment need not prevent, or significantly or severely restrict" performance of major life activities, but rather, the standard is whether it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).  This comparison "usually will not require scientific, medical, or statistical analysis". Williams v. Tarrant County College District, 717 F. App'x 440, 446-47 (5th Cir. 2018) (quoting 29 C.F.R. § 1630.2(j)(1)(v)).

The term "major life activities" includes, but is not limited to, activities such as caring for oneself, eating, sleeping, thinking, and working. 42 U.S.C. § 12102(2)(A).  Pursuant to the ADA Amendments Act of 2008, the term "major life activities" includes "[m]ajor bodily functions," which includes but is "not limited to, functions of the immune system, normal cell growth,

digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2)(B)). The ADA expressly states that "[t]he definition of disability . . . shall be construed in favor of a broad coverage of individuals . . ., to the maximum extent permitted by the terms of this chapter," 42 U.S.C. § 12102(4)(A), that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active," 42 U.S.C. § 12102(4)(D), and that "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as — medication . . ." 42 U.S.C. § 12102(4)(E)(i)(I). "[T]he relevant time for assessing the existence of a disability is the time of the adverse employment action." Chevron Phillips Chemical Co., 570 F.3d at 618.

Gamel may establish an ADA claim by using direct evidence or the indirect method of proof set forth in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). See Seaman v. CSPH, Inc., 179 F.3d 297, 300 (5th Cir. 1999). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." Rachid v. Jack In The Box, Inc., 376 F.3d 305, 310 n.6 (5th Cir. 2004) (quoting Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002), cert. denied, 123 S. Ct. 2572 (2003)). Gamel has not cited direct evidence of

discrimination and does not argue that this is a direct evidence case. Gamel's initial burden under the McDonnell Douglas framework is to establish a prima facie case of discrimination, failure to accommodate, or retaliation based upon his disability by showing (1) he has a disability, (2) he was qualified for his job, and (3) he was subjected to an adverse action on account of his disability. Caldwell v. KHOU-TV, 850 F.3d 237, 241 (5th Cir. 2017). If Gamel establishes a prima facie case, a presumption of discrimination arises, and the burden shifts to FET to articulate a legitimate, non-discriminatory reason for its adverse action. Id. at 241-42. Once FET articulates a legitimate, nondiscriminatory reason for its adverse action, the burden shifts back to Gamel who may prove intentional discrimination by producing evidence from which the jury could conclude that FET's articulated reason is a pretext for discrimination. Id. at 242. "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." Id. (quoting Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 378-79 (5th Cir. 2010)). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." Id. (quoting Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003)). "In conducting a pretext analysis, the court does not 'engage in second-guessing of an employer's business decisions.'" Roberson-King v. State of

Louisiana Workforce Commission, 904 F.3d 377, 381 (5th Cir. 2018)
(quoting LaMaire v. Louisiana Department of Transportation &
Development, 480 F.3d 383, 391 (5th Cir. 2007)).  An employee's
subjective belief that he has suffered discrimination is not
sufficient to establish pretext.  See Equal Employment Opportunity
Commission v. Louisiana Office of Community Services, 47 F.3d 1438,
1448 (5th Cir. 1995), overruled on other grounds ("an employee's
subjective belief of discrimination, however genuine, cannot be the
basis of judicial relief").


## III. Analysis

### A.   Gamel's Motion for Partial Summary Judgment

Asserting that he was diagnosed with Hepatitis C "around
2011,"[20] that it was dormant for a number of years, but that on July
28, 2017, he tested positive for hepatitis after consulting a
doctor for fatigue, irritability, and constant tiredness, Gamel
argues that he is entitled to summary judgment that he is a person
with a disability within the meaning of the ADA.[21]

--------

[20]Gamel's MPSJ, Docket Entry No. 21, p. 4.  See also Gamel
Deposition, p. 23:22-23, Gamel's Appendix, Docket Entry No. 27-1,
p. 8.  Although excerpts from the Gamel Deposition are attached to
his MPSJ as Docket Entry No. 21-1, for ease and consistency, all of
the court's cites to the Gamel Deposition are to the complete
version included in Gamel's Appendix, Docket Entry No. 27-1.

[21]Id. at 4-6 (citing Gamel Deposition, p. 155:12-21, Gamel's
Appendix, Docket Entry No. 27-1, p. 41).  Gamel also seeks summary
judgment on a number of the affirmative defenses that FET has
asserted, but because the court is able to resolve this action
(continued...)

Gamel testified about his disabilities at his deposition:

Q.      What medical condition or conditions do you
        feel constituted disability?

A.      Constant fatigue.  Ammonia build up in my
        system due to my liver.  When it starts – I don't
        go to the hospital every time my liver acts up.

        I just know my liver is acting up when, like,
        I had the surgery at Forum, it was a Friday night,
        I felt like I had indigestion.  And so I felt like
        kind of gassy, but no big deal.

        And then, by the middle of the night, when my
        little Chihuahuas – we have two little minatures –
        ran across me.  And that hurt like hell.

        And the next morning, I was laying on my back
        and my wife said, Papa, I looked up hepatitis, and
        with what you're experiencing, you're not passing
        gas orally or anything.  Will you please go see a –
        a– the ER.

        So I went to Tomball Memorial – of The
        Woodlands Memorial Hermann Hospital.  And that's
        when the doctor told me about two hours later,
        we're going to have [to] drain your abdomen.
        You'll have to thank your wife.  You owe her.  In
        two days you would be wearing a sheet over your
        head if you hadn't come in.

        Because my liver stopped processing enzymes
        and proteins, so I built up 9 ½ liters of fluid in
        my abdomen cavity.  I looked like I was pregnant,
        but it was gas, bloating.

        So they drained me, but it was all right. . .

Q.      So just to clarify, what disabilities do you
        feel you have?

---

[21](...continued)
without reference to any of FET's asserted affirmative defenses,
Gamel's motion for summary judgment on FET's affirmative defenses
will be denied as moot.

A.          Hepatitis.

Q.          Okay.  Hepatitis?

A.          Yeah.  Constant fatigue or stress.  It clouds your thinking, because when you – when the ammonia, according to the doctor, builds up in your system when the liver is not processing the enzymes and proteins, the ammonia can cause you to go in a state of confusion, or have anger issues.

You'll be quicker on your temper.  And you don't know this is happening because of the exchange in your system.[22]

FET responds that Gamel fails to cite

admissible evidence of any substantial limitation on a major life activity.  While he may have a medical diagnosis, he provides no evidence that his medical condition substantially limits a major life activity.  Because of this, the Court should deny summary judgment on this point.[23]

Citing Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 122

S. Ct. 681 (2002), and Equal Employment Opportunity Commission v.

Agro Distribution, LLC, 555 F.3d 462, 469 (5th Cir. 2009), FET

argues that "[m]erely having an impairment does not make one

disabled for purposes of the ADA," and that "the impairment must

substantially limit the individual."[24]   FET argues that

_____

[22]Id. at 5-6 (quoting Gamel Deposition, pp. 54:21-56:15, Gamel's Appendix, Docket Entry No. 27-1, p. 16).

[23]FET's Response to MPSJ, Docket Entry No. 25, p. 6.  See also id. at 11 (same); FET's MSJ, Docket Entry No. 22, pp. 12-13 ("Mr. Gamel's discrimination claim fails as . . . he has not articulated a condition that substantially limits a major life activity."); FET's Reply, Docket Entry No. 30, p. 6 ("Mr. Gamel cannot show that he has a disability under the [ADA] because he cannot show that any diagnosis substantially limited a major life activity.").

[24]FET's Response to MPSJ, Docket Entry No. 25, p. 10.

-14-

> Mr. Gamel does not meet his summary-judgment burden on
> this point.  Instead, he simply points to deposition
> testimony that he has been diagnosed with hepatitis C and
> that he sometimes feels tired, stressed, confused, and
> angry. . .   Mr. Gamel does not testify that this
> diagnosis limits any major life activity, including his
> work for [FET]. . .[25]

As evidence that Gamel was not disabled, FET cites Gamel's

testimony that Hepatits C did not affected his ability to work.[26]

Asserting that FET fails to cite that portion of the ADA's

definition of "major life activity" that includes the operation of

major bodily functions, Gamel replies that

> his hepatitis C is a permanent, long-term disability that
> was diagnosed ten years ago.  In September 2017, the
> hepatitis C essentially shut down his liver and almost
> killed him. [FET] does not dispute this.
>
>                     . . .
>
>      . . .  Mr. Gamel presented evidence that it
> substantially limited his liver function, that it caused
> fatigue, and that it limited his ability to think.[27]

Gamel testified that he was diagnosed with Hepatitis C in about

2011, and that although it remained dormant for years, in late

September of 2017 it flared up and caused him to be hospitalized

because it substantially limited the function of his liver.  Gamel

---

[25]Id.

[26]FET's Reply, Docket Entry No. 30, p. 8 (citing Gamel
Deposition, pp. 60:12-61:7, Gamel's Appendix, Docket Entry No. 27-
1, p. 17 (testifying that although fatigue caused him to leave work
early two or three times at his supervisor's direction, fatigue did
not affect his ability to do his job)).

[27]Gamel's Reply, Docket Entry No. 29, p. 2.

testified that Hepatitis C causes him constant fatigue and limits his ability to think.[28] Gamel also testified that on occasion his fatigue caused him to be sent home from work.[29]

The fact that his Hepatitis C flared up and substantially limited the function of his liver in September of 2017 is corroborated by Gamel's hospital records, which show that he was hospitalized September 22-24, 2017, for "[s]ymptomatic new onset ascites," "[d]ecompensated cirrhosis, due to HCV. . .," and "HCV infection,"[30] and that while he was hospitalized 7.4 liters of fluid were removed from his abdomen.[31] Gamel's hospital records also show that he was released from the hospital with a plan of care that included prescription medications.[32]  On October 16, 2017, when Bergerson asked him to take a drug test, he was taking medications prescribed for Hepatitis C.[33]

FET does not dispute that Gamel has Hepatitis C, or that when it discharged Gamel he was taking prescription medications for

_____

[28]Gamel Deposition, pp. 54:21-56:24, Gamel's Appendix, Docket Entry No. 27-1, p. 16.

[29]Id. at 60:22-61:7, Gamel's Appendix, Docket Entry No. 27-1, p. 17.

[30]See Discharge Summary Gamel's Appendix, Docket Entry No. 27-1, p. 62.

[31]Id. at 64.

[32]Id.

[33]Gamel Deposition, pp. 83:6-85:2, Gamel's Appendix, Docket Entry No. 27-1, p. 23.

Hepatitis C. Instead, relying on Toyota Motor, 122 S. Ct. at 681, and Agro Distribution, 555 F.3d at 469, FET argues that Gamel has failed to cite evidence capable of establishing that his Hepatitis C substantially limited a major life activity. FET's reliance on Toyota Motor and Argo Distribution is misplaced because both of those cases involved events that occurred before the 2008 amendments to the ADA. The 2008 amendments expanded the definition of "major life activities" to include "[m]ajor bodily functions," 42 U.S.C. § 12102(2)(B), and provided that the definition of "disability" "shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). In response to those amendments the EEOC has cautioned that "'[s]ubstantially limits' is not meant to be a demanding standard," 29 C.F.R. § 1630.2(j)(1)(i), "[a]n impairment need not prevent, or significantly or severely restrict" performance of major life activities, and that the standard is whether the impairment "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population". 29 C.F.R. § 1630.2(j)(1)(ii). This comparison "usually will not require scientific, medical, or statistical analysis." 29 C.F.R. § 1630.2(j)(1)(v). Because whether an impairment substantially limits a major life activity is a fact-intensive inquiry, and because Gamel's testimony about the effects his Hepatitis C has on his major life activities involves credibility determinations, the

-17-

court is not persuaded that Gamel is entitled to summary judgment that he is disabled within the meaning of the ADA. Nevertheless, in light of the "substantially limits" standard created by the ADA Amendments Act of 2008, the Court reads plaintiff's evidence about his Hepatitis C as giving rise to a genuine issue of material fact as to whether he is disabled within the meaning of the ADA. See Williams, 717 F. App'x at 446-48. See also Sechler v. Modular Space Corp., Civil Action No. 4:10-cv-5177, 2012 WL 1355586, at *11 (S.D. Tex. Apr. 18, 2012) ("In light of the 'substantially limits' standard created by the [ADA Amendments Act of 2008], the Court thinks it appropriate to read [plaintiff's] testimony as giving rise to a genuine issue of material fact as to whether her difficulties thinking . . . are unique, and unlike those experienced by the general population.").

**B.   FET's Motion for Complete Summary Judgment**

1.   <u>FET Is Entitled to Summary Judgment on Gamel's ADA Discrimination Claim</u>

Asserting that it did not discriminate against Gamel because of his disability, FET argues that it is entitled to summary judgment on Gamel's discriminatory discharge claim because Gamel is unable to establish a prima facie case, FET discharged Gamel for the legitimate, non-discriminatory reason that he failed a drug test, and Gamel is unable to cite evidence capable of establishing that FET's reason for his discharge is pretextual.[34]

---

[34]FET's MSJ, Docket Entry No. 22, pp. 12-16.

### (a)   Gamel Has Established a Prima Facie Case

In order to establish a prima facie case of discrimination under the ADA, Gamel must cite evidence capable of establishing that (1) he has a disability, (2) he was qualified for his job, and (3) he was subjected to an adverse employment decision on account of his disability.  <u>Caldwell</u>, 850 F.3d at 241.  Without disputing that Gamel was qualified for his job, or that he suffered an adverse employment action, FET argues that Gamel cannot establish a prima facie case of ADA discrimination because he

> has not articulated a condition that substantially limits
> a major life activity. . . While he testified that he has
> been diagnosed with hepatitis C, cirrhosis, and asthma,
> he does not suggest that any of these conditions
> substantially limited any major life activity, including
> his work for [FET].[35]

For the reasons stated above in § III.A, the court has already concluded that Gamel has raised a genuine issue of material fact as to whether he was disabled within the meaning of the ADA when FET discharged him.  Accordingly, the court concludes that Gamel has satisfied the requirement of establishing a prima facie case.


### (b)   FET Has Articulated a Legitimate, Non-Discriminatory Reason for Gamel's Discharge

FET argues that it is entitled to summary judgment on Gamel's discriminatory discharge claim because he was discharged for a

---

[35]<u>Id.</u> at 12-13.   <u>See also</u> FET's Reply, Docket Entry No. 30, p. 6.

legitimate, non-discriminatory reason, _i.e.,_ FET "separated Mr. Gamel from employment in accordance with it Substance Abuse Policy after it received a certified drug test from DISA showing his use of amphetamine and methamphetamine."[36]  Testing positive for use of illegal drugs is a legitimate, non-discriminatory reason for discharging an employee.  See Kitchen v. BASF, 952 F.3d 247, 253 (5th Cir. 2020) ("the apparent positive results of [plaintiff's] alcohol test and violation of company policy" constituted a legitimate, nondiscriminatory reason for discharging plaintiff).  See also Polak v. Sterilite Corp., 3:19-CV-2972-D, 2021 WL 1753757, *8 (N.D. Tex. May 4, 2021)(failure of a drug test, in violation of company policy, constituted evidence of a legitimate, nondiscriminatory reason for terminating plaintiff's employment); Hardmon v. U.L. Coleman, Civil Action No. 17-1118, 2021 WL 606871, *4 (W.D. La. February 16, 2021) (same).  Because FET has met its burden of production, the burden of production shifts back to Gamel to present evidence that would enable a reasonable fact finder to find that FET's stated reason for his discharge is pretextual.

---

[36]FET's MSJ, Docket Entry No. 22, p. 13 (citing Friar Declaration, ¶ 11, Exhibit 1 to FET's MSJ, Docket Entry No. 22-1, p. 3.  See also Attachment B to Friar Declaration, Docket Entry No. 22-1, pp. 9-23 (FET's Substance Abuse Policy); Attachment D to Friar Declaration, Docket Entry No. 22-1, p. 28 (Gamel's discharge letter); Gamel Deposition, p. 194:14-18, Gamel's Appendix, Docket Entry No. 27-1, p. 51 (acknowledging that a positive drug test caused his discharge); Exhibit 4 to FET's MSJ, Docket Entry No. 22-4, p. 4 (DISA Drug Test Result Certificate); and Medical Review Officer Worksheet, Exhibit 5 to FET's MSJ, Docket Entry No. 22-5, pp. 7-8 (verifying that Gamel tested positive for amphetamines and methamphetamine).

(c) Gamel Has Failed to Raise a Genuine Issue of Material Fact as to Pretext

Gamel "may show pretext either through evidence of disparate treatment or by showing that [FET's] proffered explanation is false or unworthy of credence." Caldwell, 850 F.3d at 242 (quoting Jackson, 602 F.3d at 378-79). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." Id. (quoting Laxton, 333 F.3d at 578). On summary judgment, Gamel only needs to rise "a genuine issue of fact regarding pretext." Id. See also Reeves, 120 S. Ct. at 2106.

Citing Kitchen, 952 F.3d at 247, and Polak, 2021 WL 1753757, FET argues that

> [i]n this case, the evidence clearly indicates that [it] relied on the DSIA drug test in discharging Mr. Gamel. . . Mr. Gamel cannot point to any evidence that [FET] knew that the drug test was wrong and/or had a discriminatory intent against him. . . Because of this, his discrimination claim fails.[37]

In Kitchen the Fifth Circuit affirmed the district court's dismissal of an ADA claim because the plaintiff "offered no evidence of a causal connection between his discharge and his alcoholism." 952 F.3d at 253. The Fifth Circuit explained that "[t]he focus of the pretext inquiry is not whether the alcohol test was accurate but whether [the defendant employer] reasonably believed its non-discriminatory reason for discharging [the

---

[37]FET MSJ, Docket Entry No. 22, p. 14. See also FET's Reply, Docket Entry No. 30, p. 6 ("[Gamel] cannot prevail on an ADA discrimination claim because he cannot show that [FET]'s stated reason for his discharge — his failed drug test — is false and is a mere pretext for discrimination.").

-21-

plaintiff] and then acted on that basis." <u>Id.</u>   In <u>Polak</u> the
district court cited <u>Kitchen</u> in support of its conclusion that the
defendant employer was entitled to summary judgment because
plaintiff "failed to provide any evidence that would enable a
reasonable trier of fact to find that [the defendant employer] did
not reasonably believe its non-discriminatory reason for
discharging him."   2021 WL 2021 WL 1753757 at *9.

Gamel does not attempt to show pretext by disparate treatment
but, instead, argues that FET's stated reason for his discharge is
false or unworthy of credence.   Gamel argues that FET's MSJ

> ignore[s] most of the evidence in this case, including
> Mr. Bergerson's hostility toward Mr. Gamel's disability,
> his efforts to terminate Mr. Gamel shortly after the
> hospital visit, his pressuring of co-workers to make
> bogus statements to support a demand for a drug test, his
> knowledge of Mr. Gamel's prescriptions, and his demand
> for immediate termination based on innocuous texts that
> he claimed were "harassment."   [FET] ignores the
> testimony that the MRO directed a second drug test to
> account for the prescriptions for his disabilities and
> that Mr. Gamel informed Ms. Suttles of the need for a
> second test.   Finally, [FET] ignores the fact that
> Ms. Suttles falsely claimed that she had been unable to
> contact Mr. Gamel, even though he had left her voice mail
> messages and had sent her emails that mentioned the
> hepatitis C, its effects, and the fact that his
> prescriptions would affect the drug test.
>
> Based on this evidence, a reasonable jury can, and
> will, find that Mr. Bergerson wanted to get rid of
> Mr. Gamel, that he concocted a bogus drug test, that HR
> knew that Mr. Gamel needed to be retested because he was
> taking prescriptions for his disability, and that HR
> pretended not to know about the retesting requirement so
> that it could appease Mr. Bergerson by firing
> Mr. Gamel.[38]

---

[38]Gamel's Response to MSJ, Docket Entry No. 27, pp. 17-18.

Gamel does not dispute that he voluntarily submitted to the drug test that Bergerson requested,[39] that the drug test came back positive for amphetamines and methamphetamine,[40] and that FET's Substance Abuse Policy provides that "[a]ny employee who receives a confirmed positive drug or alcohol test is subject to disciplinary action up to and including termination from employment."[41]  Instead, relying on his own testimony, Gamel asserts that he did not use amphetamines or methamphetamine,[42] and that the medication he was taking for Hepatitis C caused false positives.[43] But a plaintiff's "statements that he did not commit [the underlying act] are insufficient to create a triable issue of fact." Jackson, 602 F.3d at 379.  See also Cavada v. McHugh, 589 F. App'x 717, 720 (5th Cir. 2014) (per curiam) ("a litigant cannot

_____

[39]Gamel Deposition, p. 79:4-9, Gamel's Appendix, Docket Entry No. 27-1, p. 22 (referring to the drug test as "voluntary").  See also Addendum to Charge of Discrimination, Exhibit 7 to FET's MSJ, Docket Entry No. 22-7, p. 4 (Gamel stated "I agreed to the test because I had nothing to hide.").

[40]Id. at 89:6 ("I failed the drug test. . ."), 94:14-15 ("[H]e sent me to take a drug test.  I failed it."), 194:14-18 (acknowledging that he was discharged because of a positive drug test), Gamel's Appendix, Docket Entry No. 27-1, pp. 24, 26, 51.

[41]Attachment B to Friar Declaration, Docket Entry No. 22-1, p. 14.

[42]Declaration of Richard Gamel ("Gamel Declaration"), ¶ 3, Docket Entry No. 27-1, p. 56 ("I have never used methamphetamines. I was certainly not using methamphetamines at the time of my drug test in October 2017.").

[43]Gamel Deposition, pp. 83:6-9, 85:23-91:25, Gamel's Appendix, Docket Entry No. 27-1, pp. 23-25.

survive summary judgment on the strength of conclusory averments alone"). And Gamel fails to provide any admissible evidence that the medication he was taking for Hepatitis C caused a false positive on his drug test. When asked at his deposition what prescriptions he contends interfered with his drug test, he responded "the medication that starts with a P,"[44] and he stated that "I found out it would cause you to fail a drug test, because that's what the lady with unemployment, on the phone when I was filing for unemployment, found out, online, would definitely make you fail a drug test."[45] Gamel's testimony that the medication he was taking for Hepatitis C could cause false positive results on a drug test is inadmissible hearsay because Gamel is relying on this statement to show the truth of the matter stated. Inadmissible hearsay is not sufficient to create a triable issue of fact. See Okoye v. The University of Texas Houston Health Science Center, 245 F.3d 507, 510 n. 5 (5th Cir. 2001) (quoting Fowler v. Smith, 68 F.3d 124, 126 (5th Cir. 1995) ("Evidence on summary judgment may be considered to the extent not based on hearsay.")).

---

[44]Id. at 83:6-9, Gamel's Appendix, Docket Entry No. 27-1, p. 23. See also id. at 85:23-91:25, Gamel's Appendix, Docket Entry No. 27-1, pp. 23-25.

[45]Id. at 85:24-86:3, Gamel's Appendix, Docket Entry No. 27-1, pp. 23-24. See also id. at 89:12-21, and 91:20-25, Docket Entry No. 27-1, pp. 24-25 (reiterating that he learned that the medication he has taking for Hepatitis C could cause a false positive on a drug test from a woman at the unemployment commission with whom he spoke while filing a claim for unemployment and that since his conversation with that woman, he had not confirmed with any medical doctors or physicians that his liver medication could cause a false positive on a drug test).

-24-

Even if Gamel had presented admissible evidence capable of
establishing that he did not use amphetamines or methamphetamine,
or that the medication he was taking for Hepatitis C interfered
with his drug test by causing false positives, Gamel would still
have failed to raise a genuine issue of material fact for trial on
the issue of pretext.

> [U]nder the McDonnell Douglas framework, a plaintiff
> cannot prove that the employer's proffered reason is
> pretextual merely by disputing the truth of the
> underlying facts for that reason. Such evidence, alone,
> merely implies that an employer may have made a mistake
> in deciding to take action against an employee.

Haverda v. Hays County, 723 F.3d 586, 596 n. 1 (5th Cir. 2013)
(addressing retaliation). Because "[t]he focus of the pretext
inquiry is not whether the [drug] test was accurate but whether
[FET] reasonably believed its non-discriminatory reason for
discharging [Gamel] and then acted on that basis," Kitchen, 952
F.3d at 253, Gamel "must offer evidence to support an inference
that [FET] had a [discriminatory] motive, not just an incorrect
belief." Haverda, 723 F.3d at 596 n. 1. See also Bailey v. Real
Time Staffing Services, Inc., 543 F. App'x. 520, 524 (6th Cir.
2013) ("Even if the positive result was in fact false, an
employer's reliance on an erroneous result does not create a claim
under the ADA absent an independent showing that the real reason
for the firing was a disability."). Here, Gamel has failed to
adduce evidence that any of the FET employees who decided to
discharge him — Bergerson, Suttles, and Danford — did not believe

that the drug test was accurate and, that the real reason for
Gamel's discharge was his Hepatitis C.

As evidence that his disability was the real reason for his
discharge, Gamel argues that he "told Mr. Bergerson and Ms. Suttles
that he was on prescription medications and later told Ms. Suttles
that the MRO had directed he be retested[, but that] Ms. Suttles
chose to ignore this information because Mr. Bergerson was eager to
fire [him]."[46]   Gamel argues that "[a] reasonable jury can, and
will, find that [FET] terminated [him] because of his disability."[47]
While Gamel testified at his deposition that on the day he took his
drug test he told Bergerson that he was taking prescription
medications,[48] and he left a voice mail for Suttles with that
information,[49] Gamel fails to cite evidence that Bergerson, Suttles,
or Danford knew that he had Hepatitis C, or that Hepatitis C
substantially impaired one of his major life functions.

As evidence that FET knew he had Hepatitis C, Gamel cites only
a text message from July 28, 2017, that he sent to his "lead,"
i.e., floor supervisor, Dagoberto Alvarado ("Alvarado"), stating
that "my blood work came back positive for hepatitis C that's been

---

[46]Gamel's Response to MSJ, Docket Entry No. 27,  p. 19.

[47]Id.

[48]Gamel Deposition, pp. 93:17-94:15, Gamel's Appendix, Docket
Entry No. 27-1, pp. 25-26.

[49]Id. at 94:16-95:20, Gamel's Appendix, Docket Entry No. 27-1,
p. 26.

lying dormant, they think it may be active which explains fatigue, constant tiredness, irritability etc."[50]   Later the same day Gamel sent another text to Alvarado stating, "can we keep this between you Dan and I, I mean I'm not contagious . . . but people have a tendency to be standoffish towards what they don't understand."[51] Although Alvarado was the "lead" with whom Gamel worked,[52]   Alvarado was not one of the FET employees involved in the decision to discharge Gamel,[53] and there is no evidence that Gamel or Alvarado ever told Bergerson, Suttles, or any else that Gamel had been diagnosed with Hepatitis C, that Hepatitis C substantially limited any of Gamel's major life functions, or that Gamel needed an accommodation.[54]   Instead, Gamel cites evidence that on September 22, 2017, he sent Bergerson an email stating that he would not be in to work because he was going to the emergency room,[55] that the next day he sent Bergerson another email stating that he had a

---

[50]Gamel's Appendix, Docket Entry No. 27-1, p. 59.

[51]Id. at 60.

[52]Alvarado Declaration, Gamel's Appendix, Docket Entry No. 27-1, p. 58 ¶ 2.

[53]Friar Declaration, Docket Entry No. 22-1, p. 3 ¶ 11 ("The decision [to discharge Gamel] was made by 1) Mr. Gamel's immediate supervisor, Dan Bergerson, 2) HR representative, Mande Suttles, and 3) Vice-President of HR, Michael Danford.").

[54]Gamel Deposition, p. 62:22-25, Gamel's Appendix, Docket Entry No. 27-1, p. 18.

[55]Gamel's Appendix, Docket Entry No. 27-1, p. 81.

large quantity of fluid removed from his abdomen,[56] and that when he returned to work he told Bergerson that he was taking prescription medication that caused attendance issues.[57]

Citing an October 3, 2017, email that Bergerson sent to Nathalie Diotte stating that he had prepared a final write-up for Gamel, Gamel argues that "[i]nstead of addressing his health issues, Mr. Bergerson began pressing HR to let him take action against Mr. Gamel because of the attendance issues caused by the health issues."[58]  In the email Bergerson stated that Gamel

> was late on several occasions and Dago and I let it slide and didn't give him a write up.  It seemed like every other day, there was some issues with Richard and now looking back at all the text messages, it is apparent that we more than tried to give him slack as I only wrote him up twice.[59]

On October 10, 2017, Bergerson issued a final warning to Gamel stating that "[t]his is employee final warning on attendance, being late, and not calling/texting his lead first.  If lead is unavailable, then employee needs to contact production manager."[60]

---

[56]Id. at 82-84.

[57]Gamel's Response to MSJ, Docket Entry No. 27,  pp. 8-9 (quoting Gamel Deposition, pp. 63:11-64:20, Gamel's Appendix, Docket Entry No. 27-1, p. 18).

[58]Id. at 9 (quoting Gamel Appendix, Docket Entry No. 27-1, pp. 78-79).

[59]Gamel's Appendix, Docket Entry No. 27-1, p. 79.

[60]Gamel's Response to MSJ, Docket Entry No. 27,  p. 9 (citing Gamel's Appendix, Docket Entry No. 27-1, p. 86).

Asserting that "[o]n October 16, 2017, [Bergerson] pressured two of Mr. Gamel's co-workers to say that Mr. Gamel was acting erratically and then used these statements to convince HR to authorize a drug test,"[61] Gamel argues that "the resulting drug test was thus bogus and merely an instrument devised by Mr. Bergerson to get rid of Mr. Gamel. In its motion, [FET] states several times that Mr. Gamel was exhibiting 'bizarre behavior.' This is, and always was, a fabrication by Mr. Bergerson."[62] As evidence that he was not acting erratically that day, Gamel cites Alvarado's Declaration that he did not notice anything unusual about Gamel's behavior.[63] But Gamel does not dispute that on October 16, 2017, two of his co-workers, Peterson and Miller, told Bergerson that Gamel was acting strangely, and made written statements to that effect.[64] Moreover Gamel fails to offer any admissible evidence that Bergerson did not reasonably believe his co-worker's reports of strange behavior or that Bergerson pressured them to making their statements. Instead, Gamel relies on his own testimony that

> the lady, . . . her name is Jennifer Miller, she's a machinist. When I got out of Dan Mr. Bergerson's office

---

[61]Id.

[62]Id. at 10.

[63]Id. (citing Alvarado Declaration, ¶ 3, Gamel's Appendix, Docket Entry No. 27-1, p. 58 ("On the day that he was sent for a drug test, I was working with Richard. He was acting the same as he always did. I saw nothing unusual about his behavior.")).

[64]Friar Declaration, ¶ 8, Docket Entry No. 22-1, p. 3 (citing Attachment C, Docket Entry No. 22-1, pp. 25-26).

to turn in my gauges and put my tools up to go take the
drug test, she came along the machine where I was getting
my — closing my toolbox and, in tears, she said, ˙look, we
didn't — it wasn't our idea.  I was forced to say it or
else, and I'm sorry, and I didn't really have anything to
do with it.

I said, what are you talking˙about?

She said, he asked a few of us to come into his
office and say you were acting erratically or strange.
And my response was, when has Richard Gamel not acted
strange, it's Richard Gamel.[65]

Like his testimony that the medication he was prescribed for
Hepatitis C caused his drug test to be falsely positive for
amphetamines and methamphetamine, Gamel's testimony that Bergerson
pressured his co-workers to make their statements is insufficient
to raise a genuine issue of fact as to pretext because it contains
inadmissible hearsay.  See Okoye, 245 F.3d at 510 n. 5 (quoting
Fowler, 68 F.3d at 126 ("Evidence on summary judgment may be
considered to the extent not based on hearsay.")).   Gamel's
contention that "the MRO had directed he be retested[, but that]
Ms. Suttles chose to ignore this information because Mr. Bergerson
was eager to fire [him],"[66] is similarly insufficient to raise a
genuine issue of material fact as to pretext because it, too,
relies solely his own testimony of what the MRO said in an attempt
to prove the truth of the matter stated.

---

[65]Gamel Deposition, pp. 127:17-128:5, Gamel's Appendix, Docket
Entry No. 127-1, p. 34.

[66]Gamel's Response to MSJ, Docket Entry No. 27,  p. 19.

As additional evidence that Bergerson wanted to fire him, Gamel cites an October 20, 2017, email to Nathalie Diotte, and Suttles regarding Gamel stating, "We need to terminate employment."[67]   Attached to the October 20, 2017, email were communications that Gamel sent to co-workers.  Gamel argues that

> Mr. Bergerson claimed that [he] was harassing the employees and needed to be terminated immediately. . . The "harassment" consisted of a handful of benign messages that Mr. Gamel sent to co-workers because he was upset that someone had claimed that he was behaving erratically on the day of the drug test. . . [FET] now calls these messages "bizarre and erratic" (Motion at 6), but this is just spin-doctoring in an attempt to justify Mr. Bergerson's insistence of immediately terminating Mr. Gamel. . . Here is an example of one of the "bizarre and erratic" messages submitted by [FET]:
>
> > Wow, So apparently I had three "walk by evaluations", to determine as to whether I was acting trippy while changing jaws and no one could . . . approach me and ask me if I was OK?
>
> There is nothing about that message that required immediate termination, but that is exactly what Bergerson was demanding.[68]

Gamel does not dispute that he sent electronic messages to co-workers about the events leading up to his drug test, which were shared with Bergerson, and that Bergerson shared with FET's Human Resources Department together with a statement characterizing

---

[67]Gamel's Appendix, Docket Entry No. 27-1, p. 87.  See also Friar Declaration, ¶ 12, Docket Entry No. 22-1, p. 3, and Attachment E, Docket Entry No. 22-1, pp. 31-35 (text and email messages that Gamel sent to co-workers he suspected of saying he was acting strangely).

[68]Gamel's Response to MSJ, Docket Entry No. 27, pp. 11-12.

Gamel's messages as harassing, and expressing the belief that Gamel should be terminated.  While the October 2017 emails that Bergerson sent to Human Resources are evidence that Bergerson wanted Gamel discharged, whether those messages were sufficiently harassing to warrant termination is not for the court to decide.  Missing from the summary judgment record is any evidence from which a reasonable fact finder could conclude that Bergerson wanted Gamel discharged because of his disability.   Nor is there any evidence that Bergerson, Suttles, or Danford, the three FET employees who decided to discharge Gamel, did not believe the results of the positive drug test, and did not discharge Gamel because of those results but instead, discharged him because of his disability.

(d)  Conclusions as to ADA Discrimination Claim

Gamel denies having used amphetamines or methamphetamine and contests the accuracy of his drug test, but presents no admissible evidence from which a reasonable fact finder could conclude that FET did not have reasonable suspicion to ask him to take a drug test, that FET did not reasonably believe that the positive drug test results were accurate, or that FET did not discharge Gamel based on the reasonable belief that the results of his drug test were accurate but, instead, discharged Gamel on account of his disability.  Accordingly, the court concludes that FET is entitled to summary judgment on Gamel's ADA discriminatory discharge claim.

2.   <u>FET Is Entitled to Summary Judgment on Gamel's ADA Claim
     for Failure to Provide a Reasonable Accommodation</u>

Gamel alleges that FET

> violated the ADA       by failing to accommodate [his]
> disabilities by permitting the use of prescription
> medications, by failing to take reasonable steps to
> insure that the drug test would not produce a false
> positive that would discriminate against [him] because of
> his disabilities.[69]

FET argues it is entitled to summary judgment on Gamel's failure to accommodate claim because Gamel failed to exhaust his administrative remedies for this claim, and because Gamel never requested an accommodation.[70]   Asserting that "[t]he accommodation at issue in this case is the second drug test, which would have accommodated [his] use of prescription drugs for his disability,"[71] Gamel argues that the charge he filed with the EEOC discusses the fact that FET would not re-test him.[72]   Gamel also argues that "[b]ecause he was on prescription medications for his disability, he was entitled to be accommodated with a second test that controlled for the prescriptions.   This was a request for an accommodation under the ADA."[73]

---

[69]Complaint, Docket Entry No. 1, p. 3 ¶ 14.

[70]FET's MSJ, Docket Entry No. 22, pp. 16-19.

[71]Gamel's Response to MSJ, Docket Entry No. 27, p. 21.

[72]<u>Id.</u> at 22.

[73]<u>Id.</u>

-33-

(a) Additional Law

Discrimination in violation of the ADA includes failure to make "reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability . . ." 42 U.S.C. § 12112(b)(5)(A). Before a plaintiff may bring a claim for failure to provide a reasonable accommodation, the plaintiff must exhaust his or her administrative remedies. See Patton v. Jacobs Engineering Group, Inc., 874 F.3d 437, 443 (5th Cir. 2017). Exhaustion includes filing a charge with the EEOC that provides the basis for an investigation into acts underlying the allegedly unlawful conduct. Id. A court will determine whether an EEOC charge exhausts administrative remedies "not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" Id. (quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970)). To establish a prima facie failure-to-accommodate claim, a plaintiff must cite evidence capable of proving that: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." Feist v. Louisiana, Department of Justice, Office of the Attorney General, 730 F.3d 450, 452 (5th Cir. 2013).

"'An employee who needs an accommodation because of a disability has the responsibility of informing her employer.'" <u>Griffin v. United Parcel Service, Inc.</u>, 661 F.3d 216, 224 (5th Cir. 2011) (quoting <u>Chevron Phillips Chemical</u>, 570 F.3d at 621). Once an employee requests an accommodation for a disability, ADA regulations state that "it may be necessary for the [employer] to initiate an informal, inter-active process" designed to identify reasonable accommodations. 29 C.F.R. § 1630.2(o)(3). <u>See also</u> <u>Taylor v. Principal Financial Group, Inc.</u>, 93 F.3d 155, 165 (5th Cir.), <u>cert. denied</u>, 117 S. Ct. 586 (1996) ("[T]he employee's initial request for an accommodation . . . triggers the employer's obligation to participate in the interactive process of determining one."). "[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA." <u>Cutrera v. Board of Supervisors of Louisiana State University,</u> 429 F.3d 108, 112 (5th Cir. 2005) (citing <u>Loulseged v. Akzo Nobel Inc.</u>, 178 F.3d 731, 736 (5th Cir. 1999)). But failure to participate in an interactive process does not alone constitute a violation of the ADA. "'[A]n employer cannot be found to have violated the ADA when responsibility for the breakdown of the "informal, interactive process" is traceable to the employee and not the employer.'" <u>Griffin</u>, 661 F.3d at 224.

-35-

(b)   Application of the Law to the Undisputed Facts

FET is entitled to summary judgment on Gamel's ADA reasonable accommodation claim because Gamel neither exhausted his administrative remedies as to this claim, nor requested a reasonable accommodation.   Gamel's EEOC charge is insufficient to exhaust administrative remedies as to his ADA reasonable accommodation claim.   Gamel checked only the "disability" box and alleged facts supporting only disability discrimination and retaliation, stating:

> In October 2017, [FET] discharged me due to a failed drug test, even though I had repeatedly told my supervisors, human resources, and the drug testers that I was on multiple prescription drugs.   These prescriptions related to disabilities, including Hepatitis C, . . .
>
>                         . . .
>
> The drug test detected my prescriptions and generated a false positive. . . The drug testing company offered to re-test me, and I agreed to the retest. However, this never happened.
>
> The company then fired me for the positive drug test. . . .
>
> The company then retaliated against me for complaining about the drug test and the termination.   In particular, Mr. Bergerson then tried to get me arrested. . . .[74]

Gamel's EEOC charge does not mention a request for either a retest or a reasonable accommodation.   See Acker v. General Motors, L.L.C., 853 F.3d 784, 791 (5th Cir. 2017) ("Employees who require

---

[74]Addendum to Charge of Discrimination, Exhibit 7 to FET's MSJ, Docket Entry No. 22-7, p. 4.

accommodation due to a disability are responsible for requesting a reasonable accommodation."). An EEOC charge alleging only facts supporting a claim of discriminatory discharge and retaliation does not exhaust a claim of failure to reasonably accommodate. <u>See, Windhauser v. Board of Supervisors for Louisiana State University & Agricultural & Mechanical College,</u> 360 F. App'x 562, 565 (5th Cir. 2010) (per curiam) ("A failure-to-accommodate claim under the ADA is distinct from a claim of disparate treatment."); <u>Hamar v. Ashland, Inc.,</u> 211 F. App'x 309, 310 (5th Cir. 2006) (per curiam) (affirming a district court's dismissal of an ADA reasonable-accommodation claim because the underlying EEOC charge asserted only employment discrimination, and collecting cases). Because Gamel's EEOC charge did not include sufficient allegations to prompt an EEOC investigation into failure to provide a reasonable accommodation, and to thereby exhaust administrative remedies, the court concludes that FET is entitled to summary judgment on Gamel's ADA reasonable-accommodation claim. <u>See Miller v. Southwestern Bell Telephone Co.,</u> 51 F. App'x 928, at *6 n.5 (5th Cir. 2002) (per curiam) ("It is well-established that summary judgment may be granted against a non-movant solely on the basis of failure to exhaust administrative remedies."). Even if Gamel had exhausted his administrative remedies, FET would still be entitled to summary judgment on his failure to accommodate claim because Gamel failed to request an accommodation.

-37-

A disabled individual in need of an accommodation is generally required to inform the employer that an accommodation is needed. See Taylor, 93 F.3d at 165. "If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one." Id. Plaintiff testified that he never made a formal request for an accommodation for his Hepatitis C.[75] And, Gamel fails to cite any summary judgment evidence that could be construed as such a request. Thus, Gamel's failure-to-accommodate claim fails for this independent reason. Id. at 165-66. See also Johnson v. Ben E. Keith Co., No. 4:16-CV-1030-A, 2017 WL 3263134, at *4 (N.D. Tex. July 28, 2017), appeal dismissed, 2017 WL 7795989 (5th Cir. October 2, 2017) (granting summary judgment to defendant employer because plaintiff failed to request a reasonable accommodation).

### 3. FET Is Entitled to Summary Judgment on Gamel's ADA Retaliation Claim

Gamel alleges that FET "violated the ADA . . . by retaliating against [him] by making a false accusation to the police."[76]

FET argues that "Gamel cannot show that [it] retaliated against him for any legally-protected activity."[77] FET argues that Gamel

---

[75]Gamel Deposition, p. 62:22-25, Gamel's Appendix, Docket Entry No. 27-1, p. 18.

[76]Complaint, Docket Entry No. 1, p. 3 ¶ 14.

[77]FET's MSJ, Docket Entry No. 22, p. 20.

-38-

has not shown or even alleged that he engaged in any protected activity. There is no evidence to suggest that his complaints about either taking the drug test or the subsequent results related to a disability. Additionally, there is no causal connection between that complaint and the police being called, because the police were called in response to safety concerns from Mr. Gamel's former co-workers. See Ex. 6. This coupled with the erratic and overly aggressive text messages, caused [FET]'s upper management to treat Mr. Gamel with caution. See Ex. 1 at ¶ 13 and Attachment E. As such, he cannot show that this report was because of his complaint about his drug test or discharge, rather than his trespass on [FET]'s premises after . . . his threats and the Employee Communications.[78]

Asserting that he "exercised his rights under the ADA by demanding a retest to account for the prescription medications for his disability,"[79] and that "[t]his was protected activity under the ADA,"[80] Gamel argues that FET's "argument is without merit because the ADA covers more than just oppositional activity and because causation at the prima facie case phase is established by temporal proximity."[81] Citing Outley v. Luke & Associates, Inc., 840 F.3d 212, 219 (5th Cir. 2016), Gamel argues that "[a]pproximately two weeks after [he] engaged in the protected activity and was terminated, Mr. Bergerson filed a police report against [him]. Two weeks is sufficient to establish temporal proximity and thus causation."[82]

---

[78]Id.

[79]Gamel's Response to MSJ, Docket Entry No. 27, pp. 22-23.

[80]Id. at 23.

[81]Id.

[82]Id.

(a) Additional Law

The Fifth Circuit applies the McDonnell Douglas framework to analyze retaliation claims under the ADA. Therefore, in order to establish a prima facie case of retaliation under the ADA Gamel must show that: (1) he engaged in activity protected by the ADA; (2) he suffered an adverse action; and (3) there is a causal link between the first two elements. Feist, 730 F.3d at 454. Once Gamel establishes a prima facie case the burden shifts to FET to articulate a legitimate non-retaliatory reason for its action. Id. The burden then shifts back to Gamel to adduce evidence that would permit a reasonable trier of fact to find that the proffered reason is a pretext for retaliation. Id. (citation omitted). Gamel must cite evidence capable of demonstrating that the adverse action would not have occurred "but for" his protected activity. Id. (citing Seaman, 179 F.3d at 301).

(b) Application of the Law to the Undisputed Facts

Gamel testified at his deposition that he did not request a reasonable accommodation for his Hepatitis C.[83] Gamel, therefore, is unable to establish a prima facie case of retaliation because he is unable to establish that he engaged in activity protected by the ADA. Because Gamel has failed to cite evidence capable of

---

[83]Gamel Deposition, p. 62:22-25, Gamel's Appendix, Docket Entry No. 27-1, p. 18.

-40-

establishing a prima facie case of retaliation, FET is entitled to summary judgment on Gamel's ADA retaliation claim.

Even if Gamel could establish a prima facie case by showing that he engaged in activity protected by the ADA, FET would still be entitled to summary judgment on his retaliation claim because FET has stated a legitimate, non-retaliatory reason for the adverse action, and Gamel has failed to offer any evidence of pretext. FET has cited undisputed evidence that upon discharge Gamel was advised not to return to FET's facility, that on November 9, 2017, Gamel showed up unannounced in FET's parking lot at approximately 5:15 a.m., and that because the texts that he had sent to his co-workers following his drug test raised concerns for employee safety, Bergerson called the Grimes County Sheriff's Office to investigate.[84]   FET has, therefore, stated a legitimate, non-retaliatory reason for calling law enforcement to report Gamel's trespass. Gamel has neither argued nor cited any evidence capable of establishing that FET's stated reasons for calling law enforcement on November 9, 2017, were not the true reasons and were, instead, a pretext for retaliation. Accordingly, the court concludes that FET is entitled to summary judgment on Gamel's ADA retaliation claim. See Jenkins v. Cleco Power, LLC, 487 F.3d 309, 316-17 (5th Cir. 2007).

---

[84]Friar Declaration, ¶ 13, Docket Entry No. 22-1, p. 4.

-41-

## IV. <u>Gamel's Motion to Exclude Expert Testimony</u>

Because the court has been able to resolve the pending motions for summary judgment without relying on the expert testimony or report of Dr. Janci Lindsay, Gamel's Motion to Exclude Dr. Lindsay's testimony will be denied as moot.

## V.   <u>FET's Objections and Motion to Strike</u>

FET objects and moves to strike several items of evidence that Gamel has submitted in opposition to FET's MSJ.  For the reasons stated in note 4, above, the court has already concluded that FET's objection to Gamel's hospital records should be overruled and that FET's motion to strike Gamel's hospital records should be denied. Because the court has been able to resolve the Gamel's MPSJ and FET's MSJ without relying on the remaining items of evidence to which FET objects, FET's objections to and motion to strike that evidence are moot.

## VI.  <u>Conclusions and Order</u>

For the reasons stated in § III.A, above, the court concludes that Gamel is not entitled to summary judgment that when FET discharged him from his job as a machinist on October 24, 2017, he was a person with a disability within the meaning of the ADA. Because the court has been able to resolve Gamel's MPSJ and FET's

MSJ without referring to FET's affirmative defenses, Gamel's motion for partial summary judgment on FET's affirmative defenses is moot. Accordingly, Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 21, is **DENIED in PART** and **MOOT in PART.**

For the reasons stated in § III.B, above, the court concludes that FET is entitled to complete summary judgment on Gamel's claims for violation of the ADA by discharging him on account of his disability, by failing to provide a reasonable accommodation for his alleged disability, and by retaliating against him for engaging in activity protected by the ADA. Accordingly, Defendant's Motion for Complete Summary Judgment, Docket Entry No. 22, is **GRANTED.**

For the reasons stated in § IV, above, Plaintiff's Motion to Exclude Expert Testimony of Dr. Janci Lindsay, Docket Entry No. 23, is **DENIED as MOOT.**

For the reasons stated in § V, above, FET's Objections to the Plaintiff's Evidence Submitted in Response to Motion for Complete Summary Judgment, Docket Entry No. 31, are **OVERRULED** with respect to Gamel's hospital records, and **MOOT** as to all other matters.

**SIGNED** at Houston, Texas, on this 11th day of August, 2021.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-43-